```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
STATE FARM MUTUAL AUTOMOBILE         : 14 Civ. 9792 (WHP) (JCF)
INSURANCE COMPANY,                   :
                                     :         MEMORANDUM
                Plaintiff,           :         AND  ORDER
                                     :
     - against -                     :
                                     :
YURI FAYDA, M.D., et al.,            :
                                     :
                Defendants.          :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In this action, plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") alleges that various healthcare providers, including defendants Arkady Kiner and Contemporary Acupuncture P.C. (together, the "Kiner Defendants"), submitted fraudulent insurance claims for services that were not medically necessary. State Farm has filed a motion to compel the Kiner Defendants to produce financial records as well as documents from other acupuncture practices he controls. The motion is granted.

Background

New York law requires an automobile insurer, like State Farm, to provide its insureds with certain personal injury protection benefits, known as "no-fault benefits," which include up to $50,000 in coverage for various healthcare expenses. State Farm Mutual Automobile Insurance Co. v. Fayda, No. 14 Civ. 9792, 2015 WL 4104840, at *1 (S.D.N.Y. June 18, 2015). An insured may assign his right to such benefits to a healthcare provider, who then submits claims directly to the appropriate insurer to collect payment. Id. Here, State Farm alleges a racketeering enterprise operated out of

1

a shared medical facility at 100 Dyckman Street in Manhattan in which the defendants, including the Kiner Defendants, submitted bills for services that either were not performed or were not medically necessary. Id. The allegedly fraudulent conduct "was the product of an alleged 'predetermined treatment protocol'" pursuant to which patients were not legitimately "examined, diagnosed, or treated in accord with legitimate medical standards." Id. The Kiner Defendants are named in counts alleging fraud; violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., based on mail fraud; RICO conspiracy; and unjust enrichment. Id.

The complaint explains that the defendant healthcare providers gained access to patients by paying kickbacks, sometimes disguised as rent for the subleasing of space at the facility, to non-physicians, including defendant Stanislav Lentsi, who actually controlled the facility and its main tenants' medical practice. (Complaint, ¶¶ 42-44). Discovery already produced indicates that Contemporary Acupuncture paid the entities from which it rented space an amount far in excess of the purported rent, made payments to certain business entities at the direction of Mr. Lentsi, and wrote checks totaling over $160,000 to a check-cashing outfit that "was at the center of multiple indictments concerning the avoidance of currency reporting requirements and unlawful laundering of proceeds from healthcare fraud." (Memorandum of Law in Support of Plaintiff State Farm's Motion to Compel Complete Responses to State Farm's First Set of Interrogatories and Document Requests to Kiner

2

Defendants ("Pl. Memo.") at 4).  In addition, there is evidence that Mr. Kiner provided an interest-free loan of $30,000 -- which has not been re-paid -- to a co-defendant to start the medical practice from which Contemporary Acupuncture allegedly leases space.  (Pl. Memo. at 4).  Finally, at his deposition, Mr. Lentsi asserted his Fifth Amendment privilege in response to questions regarding whether Mr. Kiner paid kickbacks and whether Mr. Lentsi shared in the proceeds of Contemporary Acupuncture.[1]  (Pl. Memo. at 5-6).

State Farm seeks bank records for bank accounts in Mr. Kiner's name, Mr. Kiner's tax returns for the years 2009 through the present, and information related to professional corporations and healthcare practices other than Contemporary Acupuncture, including "(a) agreements, including leases regarding activities at [these other practices]; (b) documents reflecting or relating to payments relating to such agreements; and (c) transcripts of testimony" from examinations under oath.  (Pl. Memo. at 7, 14).  The Kiner Defendants object, arguing that the information is both irrelevant and private.

Discussion

    A.   Legal Standard

The 2015 amendments to the Federal Rules of Civil Procedure "govern in all proceedings in civil cases" commenced after December

---

[1] Although it would have been advisable, the plaintiff does not include such evidence in its submission.  However, its counsel represents that this evidence exists, and the Kiner Defendants do not argue that these representations are false.

3

1, 2015, and, "insofar as just and practicable, all proceedings [] pending" on that date.  Order re: Amendments to Federal Rules of Civil Procedure (April 29, 2015).[2]  No party has argued that the application of the amended rules to this dispute is unfair or impracticable, and I find no reason that they should not be applied to this dispute.

> The amendments to Rule 26(b)(1) allow discovery of
>
> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  As the advisory committee notes, the proportionality factors have been restored to their former position in the subsection "defining the scope of discovery," where they had been located prior to the 1993 amendments to the rules.  Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.  Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  However, the amended rule is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality before ordering production of relevant information.  Fed. R. Civ. P. 26(b)(1) advisory

---

[2] The order of April 29, 2015, can be found at http://www.supremecourt.gov/orders/ordersofthecourt/14.

committee's notes to 2015 amendment.  The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations."  Id.  In general, when disputes are brought before the court, "the parties' responsibilities [] remain the same" as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense.  Id.; see also Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.").   Moreover, information still "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

    B.   The July 21, 2015 Order

State Farm repeatedly contends I have already found this information to be discoverable and that therefore the law of the case doctrine requires its production.  (Pl. Memo. at 11; State Farm's Reply in Support of its Motion to Compel Complete Responses to State Farm's First Set of Interrogatories and Document Requests to Kiner Defendants ("Reply") at  2).  Previously, State Farm requested similar information from defendants Yuri Fayda, M.D., Dyckman Neighborhood Medical, P.C., and Hadassah Orenstein, M.D. (Letter of Michael M. Rosensaft and Matthew J. Conroy dated July 8, 2015 ("7/8/15 Letter") at 1).  I found that tax records of Dr. Orenstein, bank records of Dr. Orenstein and Dr. Fayda, and

5

information regarding health care practices by defendants at locations other than 100 Dyckman Street were relevant and discoverable. (Memorandum Endorsement dated July 21, 2015). However, State Farm argued in part that the information was relevant to show that Dyckman Neighborhood Medical was not owned by either Dr. Fayda or Dr. Orenstein, but, rather, by Mr. Lentsi, who is not a physician. (7/8/15 Letter at 2-5). This would assertedly establish that the medical practice was "illegally incorporated and ineligible to bill for services, and every bill it submitted to State Farm representing that its services were reimbursable was false." (7/8/15 Letter at 2).

As the Kiner Defendants point out, State Farm does not allege that Contemporary Acupuncture is similarly illegally incorporated. (Memorandum of Law on Behalf of Defendants' [sic] Arkady Kiner and Contemporary Acupuncture P.C. in Opposition to State Farm's Motion to Compel ("Def. Memo.") at 4-7). Thus, the Kiner Defendants are not situated similarly to Dr. Orenstein and Dr. Fayda, so that the July 21 Order does not mandate the outcome here.[3]

---

[3] State Farm notes that the Kiner Defendants have conceded that the financial records would be relevant to a cause of action based on fraudulent incorporation, and argues that "nothing prevents [State Farm] from conducting discovery to determine if Contemporary [Acupuncture] is, in fact, fraudulently incorporated." (Reply at 3-4, 6). That is not necessarily so. Discovery is generally limited to "information related to 'the actual claims and defenses involved in the action.'" Guan Ming Lin v. Benihana National Corp., No. 10 Civ. 1335, 2010 WL 4007282, at *3 (S.D.N.Y. Oct. 5, 2010) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendments)). The 2015 amendments do not change this, although the advisory committee points out that "[d]iscovery that is relevant to the parties' claims or defenses may [] support amendment of the pleadings" and that the court may order appropriately focused discovery into the "subject matter" of

C.   Bank Records and Tax Returns

State Farm argues that the bank records and tax returns are "crucial" to showing that the medical providers at the facility "paid kickbacks for access to patients, and that treatment was not provided because it was medically necessary but because money was paid to the people who controlled the patients." (Reply at 4). According to the plaintiff, the financial records sought will enable them to show that the Kiner Defendants were financially dependent on the individuals who referred the patients to the practice by demonstrating that the amount the Kiner Defendants earned by treating these patients "represented a significant portion of [their] overall annual compensation." (Pl. Memo. at 10). This, in turn, would provide a motive for their participation in the alleged scheme to submit fraudulent bills for medically-unnecessary treatment.

Case law indicates that evidence of a defendant's motive for participation in a fraudulent medical billing scheme is relevant to such claims and that financial documents like these are discoverable to establish that motive. See, e.g., State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C., 375 F. Supp. 2d 141, 155-56 (E.D.N.Y. 2005) (financial records "may be relevant to establishing that defendants profited from their willingness" to order medically-unnecessary tests); see also State

---

the action. Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendments. As noted, State Farm has not alleged that Contemporary Acupuncture was fraudulently incorporated. It is therefore difficult to see how discovery targeting possible fraudulent incorporation would be relevant.

7

Farm Mutual Automobile Insurance Co. v. Warren Chiropractic and Rehab Clinic, P.C., No. 4:14 CV 11521, 2015 WL 4094115, at *6 (E.D. Mich. July 7, 2015); State Farm Mutual Automobile Insurance Co. v. McGee, No. 10 CV 3848, 2012 WL 8281725, at *2 (E.D.N.Y. Feb. 21, 2012) (financial records sought to establish healthcare provider financially dependent on co-defendants "relevant to demonstrate his motive in participating in the fraud," among other things).[4]  The Kiner Defendants, however, argue that this argument is "inane.  The motive for fraud is money.  It is a given.  There is no need to look at money in Kiner['s] and his family's financial records and say, in effect, 'hey I see money -- that is the motive for fraud.'" (Def. Memo. at 17).  The concession that money can be a motive for participation in fraud is well-taken.  Having admitted this, however, it is unclear why the Kiner Defendants would imagine that discovery tending to establish such motive -- that is, discovery revealing sources and amounts of the Kiner Defendants' profits -- is irrelevant.  It would be an unlikely trial strategy for the plaintiff to argue to the fact-finder that the Kiner Defendants participated in the fraud and RICO enterprise for financial gain but then fail to put on evidence of such gain.

In addition, the plaintiff asserts it has uncovered evidence of complex financial transactions that may have been used "to

---

[4] The Kiner Defendants insist that, in McGee, disclosure was ordered "solely based on the allegation that [the defendant] did not own his medical practice and instead the medical practice was owned by laypersons." (Def. Memo. at 20).  But the opinion is clear that the information sought was also relevant to the defendant's motive for fraudulently billing for unnecessary medical services.

conceal assets or income." (Pl. Memo. at 9, 11). As State Farm argues, such evidence could be used to show consciousness of guilt. Consciousness of guilt, in turn, could be used to establish the Kiner Defendants' intent to defraud (an element of a fraud claim under New York law, Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001), and an element of mail fraud, United States v. Von Barta, 635 F.2d 999, 1005 n.14 (2d Cir. 1980), which is the predicate offense for State Farm's civil RICO claim. See, e.g., United States v. Paccione, 949 F.2d 1183, 1199 (2d Cir. 1991) (evidence of consciousness of guilt relevant to show intent). Thus, the requested financial records are relevant.

The Kiner Defendants also argue that they should not be required to produce the records because the discovery is disproportionate to the needs of the case and because the records are private. Neither objection succeeds.

Rule 26(b)(1) instructs parties and courts to evaluate whether the benefit of the discovery sought is proportional to the burden of producing it, taking into account issues like access, importance, and available resources. Fed. R. Civ. P. 26(b)(1); see also In re Weatherford International Securities Litigation, No. 11 Civ. 1646, 2013 WL 2355451, at *5 (S.D.N.Y. May 28, 2013) ("A proportionality analysis requires the court to balance the value of the requested discovery against the cost of its production."). The Kiner Defendants allege that State Farm paid them approximately $12,000 and that the discovery requested is therefor of little value to the case. (Def. Memo. at 1, 4). However, they have

failed to rebut State Farm's showing that the financial records are relevant and material to its case against them. Nor have they established that the plaintiff has an alternative source for the information or that producing it would be particularly burdensome. See Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment (noting that "the [2015 amendments] do[] not place on the party seeking discovery the burden of addressing all proportionality considerations" because, for example, "a party requesting discovery . . . may have little information about the burden or expense of responding"); see also In re Weatherford, 2013 WL 2355451, at *5 (ordering discovery where parties opposing production "have not shown that the information sought is not sufficiently germane, nor, on the other side of the scale, have they provided any specific evidence of burden"). Therefore, their proportionality argument fails.

Federal courts regularly entertain objections to discovery requests based on a "constitutionally-based right of privacy." A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (quoting Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 657 (C.D. Cal. 2005)). Indeed, there is a well-recognized "quasi-privilege that attaches to tax returns," Trustees of New York City District Council of Carpenters Pension Fund v. Halcyon Construction Corp., No. 15 Civ. 1191, 2015 WL 6509022, at *1 (S.D.N.Y. Oct. 26, 2015), because of "'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete

10

and accurate returns,'" <u>Rahman v. Smith & Wollensky Restaurant Group</u>, No. 06 Civ. 6198, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007) (quoting <u>Smith v. Bader</u>, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)). Nevertheless, a court will order tax returns and other sensitive financial information produced where it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available. <u>Rahman</u>, 2007 WL 1521117, at *7. "[T]he party resisting disclosure should bear the burden of establishing alternative sources for the information." <u>Id.</u> (quoting <u>United States v. Bonanno Organized Crime Family of La Cosa Nostra</u>, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)).

State Farm has demonstrated the relevance of this information. As noted above, however, the Kiner Defendants have not attempted to show that there are alternative sources for the information. Rather, they, through their counsel, merely insist that the information is sensitive:

> Let me be straight -- I would not want an organization like State Farm and its buff [sic] investigators and cadre of attorneys and the [National Insurance Crime Bureau] looking at my personal finances. The lingerie I may have purchased for my wife; my liquor store purchases; the possible purchases of other romantic enhancements -- even Viagra, etc. Even the football equipment I purchase for my son -- I do not want an organization like State Farm soiling my family. The Kiner family feels the same way.

(Def. Memo. at 20). They are also concerned because among the accounts for which bank records are sought are a joint account held by Mr. Kiner and his parents and a joint account held by Mr. Kiner, his wife, and their son. (Def. Memo. at 1). Neither of these objections constitutes a reason to wall off this relevant

11

information, especially since it will be designated confidential pursuant to the protective order entered in this case. See, e.g., State Farm Mutual Automobile Insurance Co. v. Physiomatrix, Inc., No. 12 CV 11500, 2013 WL 10572229, at *3 & n.3 (E.D. Mich. Aug. 13, 2013) (ordering production of relevant financial records, including accounts held jointly with non-party wives, over privacy objection);[5] A. Farber and Partners, 234 F.R.D. at 191 (ordering production of financial records where impact of disclosure could be lessened by entry of protective order).

   D.   Information About Other Practices

State Farm asserts it is entitled to production of "(a) agreements, including leases, regarding activities at [Mr.] Kiner's other practices; (b) documents reflecting or relating to payments relating to such agreements; and (c) transcripts of testimony."[6] (Reply at 7). It argues that the testimony sought is relevant to

---

[5] The Physiomatrix Court quashed the subpoena seeking banking records to the extent that it required production of information about an account one of the defendants held with his elderly parents, reasoning that "[c]hildren are often placed on the personal accounts of their elderly parents for completely innocuous reasons." Id. at *4. But the court ordered production of records from other jointly-held accounts because the defendant had control over the accounts and could easily move funds among them. Id. at *3. That is also true of an account jointly-held with one's parents. In any case, the Kiner Defendants do not argue here that the joint account with Mr. Kiner's parents should be treated any differently from the other accounts.

[6] The testimony at issue appears to be "testimony relating to treatment by other professional corporations [] other than Contemporary [Acupuncture]" (Letter of Michael M. Rosensaft and Raymond Joseph Zuppa dated Aug. 25, 2015, at 7) given in connection with examinations under oath "taken pursuant to the insurance regulations that are incorporated into all no fault contracts of insurance that compel the provider to attend or not be paid for the services rendered" (Def. Memo. at 24).

12

whether unnecessary medical treatment like that alleged in the complaint was provided at other practices. (Reply at 8). As to the agreements and financial documents, State Farm notes that if they reveal financial arrangements similar to those at the 100 Dyckman Street facility

> it would tend to show that [Mr.] Kiner did not provide care because it was medically necessary, but because of the financial relationships he had with lay 'gatekeepers' who controlled the locations. Conversely, if the financial arrangements were different at other locations because reimbursement was paid by a source other than No-Fault benefits -- or the care patients received at other locations was different -- this would also support State Farm's theory, that the scheme at 100 Dyckman was designed to take full advantage of the No-Fault system.

(Reply at 8).

The Kiner Defendants again contend that this information is not relevant because the fraud alleged against them deals only with whether treatment they performed at the 100 Dyckman Street facility was medically necessary. (Def. Memo. at 23). However, as noted, State Farm argues that comparing the treatment and financial arrangements at other facilities with those at 100 Dyckman Street may provide evidence as to the fraud alleged against the Kiner Defendants in the complaint. The Kiner Defendants further object to production of transcripts of "examinations under oath." According to them, these examinations

> are specific between the insurance company that insured the patient and the applicant for benefits. [They] involve[] patient information and confidentiality since [they are] compelled. It is generally understood that insurance companies after taking [an examination under oath] are not free to send the transcript . . . to another insurance company. That would be grounds for sanction by the Department of Finance.

(Def. Memo. at 24). The Kiner Defendants cite no authority for this proposition. However, even assuming that it is true, patient confidentiality can be preserved by redacting patient names and by designating the records as confidential pursuant to the protective order.

    E.    <u>Future Cooperation</u>

Counsel for the Kiner Defendants states that his working relationship with counsel for the plaintiff "has grown quite contentious." (Letter of Raymond J. Zuppa dated Oct. 23, 2015). There is disheartening evidence in the submissions made in connection with this motion that the relationship between counsel has eroded. The rhetoric of the Kiner Defendants' opposition brief is overblown and intemperate, characterizing State Farm's arguments as "duplicitous and deceitful," "desperate," "obtuse," "delusional," and "inane," and accusing the plaintiff, its investigators, and its attorneys of attempting to "soil[]" Mr. Kiner's family. (Def. Memo. at 7, 10, 13, 16-17, 20). For its part, State Farm asserts that because the Kiner Defendants are "willing to produce medical records from [] [o]ther [p]ractices," they have "implicitly conced[ed] that treatment at other locations is relevant." (Pl. Memo. at 16). Treating as a "concession" an opponent's cooperation in resolving a discovery dispute, while not an ethical violation as the Kiner Defendants imply (Def. Memo. at 21-22), is both a losing argument and a short-sighted strategy that is likely to curtail cooperation among counsel. Indeed, counsel for the Kiner Defendants asserts that this conduct is

14

"unprofessional" and that he is "well within [his] rights to never negotiate with [the] [p]laintiff's counsel about any and every dispute that may arise." (Def. Memo. at 22). Of course, counsel is mistaken. The federal rules require, and this Court expects, that counsel will cooperate to resolve any future disputes and will behave respectfully toward each other and toward the Court.

Conclusion

For the foregoing reasons, State Farm's motion to compel (Docket no. 116) is granted. The Kiner Defendants' request for oral argument is denied. The requested documents shall be produced within fourteen days of the date of this order.

SO ORDERED.

*[signature]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 3, 2015

Copies transmitted to:

Michael M. Rosensaft, Esq.
Katten Muchin Rosenman, LLP
575 Madison Ave.
New York, NY 10022

Raymond J. Zuppa, Esq.
The Zuppa Firm PLLC
53 Herbert St.
Suite 1
Brooklyn, NY 11222

15